IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

MARLENE GARMON,

    Plaintiff,

vs.                              CASE NO. CV-00-J-3053-NE

PRESSAC INC., and
DAVID STONEBURNER,

    Defendants.

## MEMORANDUM OPINION

Currently pending before the court is the defendants' motion for summary judgment (doc. 22), evidence in support of said motion (doc. 23) and a memorandum of law. The plaintiff submitted a brief in opposition thereto and filed evidence in support of her opposition (doc. 31) to which the defendant has submitted a reply.

Plaintiff commenced this action by filing a complaint alleging the defendant allowed the plaintiff to be subjected to sexual harassment by her supervisor and discriminated against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"). The plaintiff alleges she was thereafter constructively discharged based. She further brings state law causes of action for the tort of outrage, assault and battery, and negligent retention and supervision. Upon consideration of the pleadings, memoranda of the parties and evidentiary submissions received, the court concludes that the motion for summary judgment is due to be denied in part and granted in part.

## FACTUAL BACKGROUND

In the light most favorable to the plaintiff, the court finds the facts of this case to be as follows:

In August of 1999, the plaintiff was assigned to work at Pressac, Inc. ("Pressac") as a temporary employee through an employment agency. Complaint ¶ 9, plaintiff depo. at 143, 146. The plaintiff did not want an office job when she applied and she listed "machine operator" as her subject of special study or training on her application. Plaintiff depo. at 144. Plaintiff was given a job at Pressac sorting and inspecting some of the circuit-boards made at the company. *Id.* at 148-152; complaint ¶ 9. The plaintiff worked at this job satisfactorily for three months and was then given a full-time position at Pressac on October 27, 1999. Plaintiff depo. at 156-157. Plaintiff was eventually notified that her current position was ending and she was offered a similar job on a different "line" at Pressac. *Id.* at 162.

David Stoneburner, a supervisor at Pressac, informed the plaintiff that he would not send her out on that "line" because the women on that line were "bitches." *Id.* at 163. He told the plaintiff that he was going to create a "dock auditor" position for her in his office. *Id.* at 169-170. Plaintiff started work at this position on January 4 or 5, 2000, and worked in the front office with Stoneburner and another female employee. *Id.* at 170. Plaintiff shared a desk and computer with Stoneburner. *Id.* at 171. Plaintiff states she knew almost nothing about computers, but that Stoneburner told her someone else would "take care of the computer stuff" until the plaintiff could be trained. *Id.* at 206; complaint ¶¶ 13, 14.

Stoneburner told the plaintiff the position he created for her could lead to her advancement with the company. Plaintiff depo. at 205.

The plaintiff claims that Stoneburner massaged her shoulders, rubbed her legs, and tried to touch her breasts; however, the plaintiff managed to stop Stoneburner by shrugging him off, pressing her legs together, or stopping his hand. Plaintiff depo. at 54-55, 63; 242-245; complaint ¶ 16. She states he would massage her when she would sit at the computer and call her "his pretty blonde." Plaintiff depo. at 19-20. He would also require her to remove her hairnet in the office. *Id.* at 209. The plaintiff did not immediately report his behavior because she thought he would "get the message." *Id.* at 54.

On January 12, 2000, because she could not take any more of Stoneburner touching her and from fear he might attack her, the plaintiff went to Donna Holcombe, head of Human Resources, and told her that she was very uncomfortable, did not know much about the computer and that David was touching her.[1] *Id.* at 192, 194-195; complaint ¶ 23; Holcombe affidavit ¶ 3.

Holcombe immediately arranged a transfer for the plaintiff to a job in production that had the same benefits, hours, and pay. Plaintiff depo. at 195, 205, 212; Holcombe depo. at 24. Plaintiff alleges that she viewed the change in position as a demotion because she lost the opportunity to learn computer skills. Plaintiff depo. at 21-22. However, plaintiff also

---

[1]According to Martin Kilmurry, president of Pressac, another employee also complained about Stoneburner in January, 2000. Kilmurry affidavit at ¶ 3. Holcombe also testified that another employee complained that Stoneburner was touching her. Holcombe depo. at 26.

states that she was satisfied with her transfer because Stoneburner could no longer touch her. Plaintiff depo. at 272. No investigation of the plaintiff's complaint was undertaken at that time. Holcombe depo. at 31.

The plaintiff states that after she was moved out of the dock auditor position she was placed on a line that had malfunctioning machines. *Id.* at 288. She was expected to do the work of two or three people, and she claims that other workers reported that they had been instructed to not help her with her work. *Id.* at 79-82, 291; complaint ¶ 27. *See also* plaintiff affidavit at 2. The plaintiff had no regular physical contact with Stoneburner after the transfer, although he did "get in her face" and tell her that he wanted her back. Plaintiff depo. at 222, 364. On one particular occasion, he told her he missed her and wanted her back in the office with him. *Id.* at 224.

Two months later, on March 13, 2000, the plaintiff was called to Holcombe's office. *Id.* at 293; Holcombe affidavit ¶ 5; Holcombe depo. at 48. *See also* Exhibit E to defendants' evidentiary submissions. Holcombe asked the plaintiff to detail everything that had happened with Stoneburner so that Holcombe could write it out. Plaintiff depo. at 293; complaint ¶ 28. The plaintiff told her much of what occurred, but did not tell Holcombe about "a bunch of the stuff," because she was embarrassed and could not remember everything that had happened.[2] Plaintiff depo. at 225, 293-294. Stoneburner was apparently questioned about plaintiff's allegations for the first time on March 15, 2000. Defendants'

---

[2] One "note to file" on March 16, 2000 states the plaintiff was told Stoneburner had been warned to stay away from her. Defendants' Exhibit E.

4

Exhibit E. On March 16, Holcombe called the plaintiff to her office to review the typed copy of the plaintiff's March 13 statement. *Id.* at 304. The plaintiff refused to sign the statement unless she was given permission to take a copy home, review it and finish writing "the rest of the stuff." *Id.*; complaint at ¶ 29. Holcombe informed the plaintiff that she could not take the document home because it was a company document, though Holcombe admits no written policy at Pressac would have prevented the plaintiff from taking the document home.³ Plaintiff depo. at 304, 312; Holcombe depo. at 56-57; Holcombe affidavit ¶ 8; Kilmurry affidavit ¶ 6.

Holcombe went to her supervisor's office and, when she returned, asked the plaintiff to accompany her so that she could meet with Martin Kilmurry, the president of Pressac, and Chris Wisener, the vice-president of finance at Pressac. Plaintiff depo. at 314-315; Holcombe affidavit at ¶ 9. During the meeting, the plaintiff once again told about some of her experiences with Stoneburner, but not all of them. The plaintiff alleges that she was grilled for over an hour and repeatedly accused of lying. Plaintiff depo. at 31. The plaintiff was told by Kilmurry that she was not got going to be fired but that she could resign.⁴ *Id.* at 338; complaint ¶ 32-33. The plaintiff was asked to come in the next Monday and take all

---

³The court notes that although the defendants claim the statement was confidential, the information in it came from the plaintiff. Thus, none of the information in the statement would have been new to the plaintiff.

⁴According to Kilmurry, this was in response to plaintiff's suggestion that her employment be terminated. Kilmurry affidavit at ¶ 17.

the time she needed to prepare and sign a statement about her complaints. Plaintiff depo. at 317. The plaintiff agreed to come in and prepare such a document. *Id.* at 318.

The plaintiff returned on Monday and was told she was not going to be fired, but she could resign. *Id.* at 338. The plaintiff informed Holcombe that since Martin (Kilmurry) wanted her to resign, she was going to do so. *Id.* Holcombe suggested that the plaintiff go to the doctor and get something for her nerves and return on Tuesday. *Id.* at 338-339. The plaintiff left and did not return to work. *Id.* at 342. Her employment was terminated March 22, 2000 for failing to report to work for two consecutive days. Defendant's Exhibit E.

Pressac has an anti-harassment policy. Exhibit C to defendants' evidentiary submissions. The plaintiff received a copy of the handbook and states she read it. Plaintiff depo. at 377; Exhibit D to defendant's evidentiary submissions. The handbook states that appropriate corrective action will be taken if an investigation confirms allegations of harassment, all employees are expected to cooperate with any investigation, and that failure to cooperate with an investigation "may lead to discipline including dismissal." Plaintiff depo. at 379; Defendant's Exhibit C.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. SH. Kress & Co.*, 398 U.S. 144, 157 (1970). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court

7

on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

## LEGAL ANALYSIS

### Sexual Harassment (Count I)

> When analyzing whether an employer should be held liable for a supervisor's harassment, courts should separate these cases into two groups: (1) harassment which culminates in a "tangible employment action," such as discharge, demotion or undesirable reassignment, and (2) harassment in which no adverse "tangible employment action" is taken but which is sufficient to constructively alter an employee's working conditions.

*Frederick v. Sprint/United Management Co.*, 246 F.3d 1305, 1311 (11th Cir.2001).

Under the first alternative, an employer is automatically held to be vicariously liable when a supervisor's harassment results in an adverse "tangible employment action" against an employee. *Id.*, citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 763, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 790, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Under the second alternative, when there has been no tangible adverse employment action, "a plaintiff must present sufficient evidence to show that the harassment she suffered objectively and subjectively, was severe or pervasive." *Frederick*, 246 F.3d at 1313; citing *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 582-83 (11th Cir.2000). If a plaintiff shows this, the employer may assert an affirmative defense derived from the *Ellerth* and *Faragher* cases known as the *Ellerth/Faragher* affirmative defense. *Frederick*, 246 F.3d at 1313.

8

The court finds, given the facts of this case viewed in the light most favorable to the plaintiff, that the plaintiff's move to production immediately upon complaining about Stoneburner's advances could be viewed as a tangible adverse employment action because she would not receive computer training. The plaintiff claims she missed out on job opportunities because of this transfer although she lost no benefits or pay. Plaintiff depo. at 272-275. Additionally, the plaintiff asserts she was treated unfairly after she was placed back on a line in production. Therefore, summary judgment shall be denied on the plaintiff's claim of sexual harassment.

The defendant asserts that the plaintiff suffered no tangible adverse employment action and that it is entitled to an affirmative defense under *Ellerth/Faragher*. This defense has two prongs: "(1) that the employer exercised reasonable care to prevent and promptly correct harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer, or to otherwise avoid harm." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. The defendant bears the burden of proof on both elements. *Id.*

The presence of a formal sexual harassment policy does not necessarily mean that an employer exercised reasonable care to prevent harassing behavior. *Frederick*, 246 F.3d at 1314. For a sexual harassment policy to satisfy the first element of the first prong of the defense, the policy must be properly disseminated and contain reasonable complaint procedures. *See e.g., Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1298-99 (11th Cir.2000). Pressac does have a sexual harassment policy. The plaintiff admits that she was

given the policy and understood it. The policy is clear as to who to complain to in the event of harassment, and the plaintiff complained to one of the people listed in the policy.

To satisfy the second element of the first prong of the defense, the employer need not act "instantaneously" but must act in a reasonably prompt manner to respond to the employee's complaint." *Frederick*, 246 F.3d at 1314. In the facts before this court, Pressac took action to correct the harassment by moving the plaintiff out from under the supervision of Stoneburner. She was placed in a different part of the plant, and she had limited contact with Stoneburner after the move. However, for an unexplained reason, Pressac conducted no investigation into Stoneburner's actions for two months. Once the investigation was begun, the plaintiff alleges she was accused of lying and told that she would not be fired but she could resign. As such, the court finds genuine issues of material fact exist as to the second element of the first prong of the defense. Thus, even assuming that the plaintiff failed to establish an adverse employment action, the court finds Pressac is not entitled to summary judgment based on the *Ellerth/Faragher* affirmative defense. Therefore, the court will not undertake any further analysis on this issue.

## Constructive Discharge (Count I)

To successfully claim constructive discharge, a plaintiff must demonstrate that working conditions were "so intolerable a reasonable person in her position would have been compelled to resign." *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir.1997). Here, once the plaintiff complained of sexual harassment, she was immediately moved away from Stoneburner and to a production line. No investigation was undertaken

10

by the employer for two months, after which the plaintiff testified she was accused of lying and told that she could resign, although she would not be fired. Furthermore, having begun an investigation, Pressac would not allow the plaintiff to take a copy of her statement home to review, although nothing in the statement would have been confidential to the plaintiff. Additionally, Holcombe testified that she first told the plaintiff she could not remove the statement from defendant's premises, and then learned the statement would be considered a confidential document. The plaintiff also alleges that the statement that Holcombe asked her to sign contained admissions that would have destroyed any sexual harassment case.

The plaintiff further claims she was expected to do the work of two or three people and not allowed to have help from other employees. Taken in the light most favorable to the plaintiff, the court finds this count of the complaint survives the defendants' summary judgment motion.

## State Law Claims

### Vicarious liability (Counts II-V)

The plaintiff also has state law claims against Pressac. The plaintiff claims that Pressac has vicarious liability for the tortious acts of Stoneburner. For Pressac to be vicariously liable for the actions of Stoneburner, the plaintiff must show that the wrongful acts were "in the line and scope of employment, or that the acts were committed in furtherance of the business of the defendant, or that the defendant participated in, authorized or ratified the wrongful acts." *Busby v. Truswal Systems Corp.*, 551 So.2d 322, 326 (Ala.1989) (internal citations omitted). The Alabama Supreme Court has stated that sexual

misconduct, including assault and battery by an employee, is purely personal and outside the line and scope of his employment. *Doe v. Swift*, 570 So.2d 1209, 1211 (Ala.1990). Therefore, Stoneburner's harassment of the plaintiff was outside the line and scope of his employment. Also, "no corporate purpose could conceivably be served by his overtures," therefore, his acts were not committed in the furtherance of Pressac's business. *Busby*, 551 So.2d at 327.

For the plaintiff to show that Pressac ratified the conduct of Stoneburner, she must show that Pressac (1) had actual knowledge of the tortious conduct and that the tortious conduct was directed at and visited upon the plaintiff; (2) that based upon this knowledge, Pressac knew, or should have known, that such conduct constituted a tort; and (3) that Pressac failed to take adequate steps to remedy the situation. *Mardis v. Robbins Tire & Rubber Co.*, 669 So.2d 885, 889 (Ala.1995); citing *Potts v. BE&K Construction Co.*, 604 So.2d 398, 400 (Ala.1992).

The plaintiff has failed to produce evidence that Pressac had any knowledge of Stoneburner's conduct until the plaintiff apprized them of his behavior, nor has she shown that Pressac should have known of the harassment prior to the time she told Holcombe. Therefore, plaintiff has not produced evidence to show that Pressac ratified Stoneburner's behavior. Pressac is not vicariously liable for the plaintiff's state law tort claims.

**Tort of Outrage (Count V)**

The elements for the tort of outrage are: (1) that the defendant's conduct was intentional or reckless; (2) that it was extreme and outrageous; and (3) that it caused

emotional distress so severe that no reasonable person could be expected to endure it. *Sanders v. Shoe Show, Inc.*, 778 So.2d 820, 823 (Ala.Civ.App.2000); citing *American Road Service Co. v. Inmon*, 394 So.2d 361, 365 (Ala.1980);

The court finds that Pressac's conduct in investigating the plaintiff's complaints does not rise to the level of conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Inmon*, 394 So.2d at 365 (citations omitted). No evidence in the record of any behavior by Pressac rises to such a level of conduct. Furthermore, in the light most favorable to the plaintiff, Stoneburner's conduct is condemnable, but again does not rise to a level as to be regarded as atrocious and utterly intolerable in a civilized society. The plaintiff has also failed to produce any evidence that her emotional distress was so severe that no reasonable person could endure it. Therefore, the third prong of outrage is also not satisfied. As such, the court shall grant summary judgment in favor of the defendants and against the plaintiff on Count V of the complaint.

**Negligent Retention or Supervision (Counts III and IV)**

In order for the plaintiff to prove a negligent supervision claim, she must show that Pressac had "notice or knowledge (actual or presumed)" of Stoneburner's unfitness. *Perkins v. Dean*, 570 So.2d 1217, 1219 (Ala.1990); *Sanders*, 778 So.2d at 824. Liability depends upon establishment by affirmative proof such incompetence was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which the would charge him in the law with such knowledge. *Lane v. Central Bank of Alabama,*

13

*N.A.*, 425 S.2d 1098, 1100 (Ala.1983). The plaintiff has submitted no evidence to establish Pressac was aware of any unfitness or incompetence of Stoneburner. The plaintiff also has produced no evidence to establish that Pressac would have learned of his alleged incompetence had it exercised due and proper diligence. Therefore, summary judgment shall be granted on Counts III and IV of the complaint in favor of the defendant Pressac and against the plaintiff.

**Assault and Battery (Count II)**

Assault and battery is defined as any touching by one person of the person or clothes of another in rudeness, in anger, or in a hostile manner. An intent to injure is not required. *Mills v. Wex-Tex Industries, Inc.*, 991 F.Supp. 1370, 1382 (M.D.Ala.1997), citing *Prescott v. Independent Life & Accident Ins. Co.*, 878 F.Supp. 1545 (M.D.Ala.1995)(other citations omitted). The touching must create in the mind of the party alleging assault a well-founded fear of an imminent battery, coupled with an apparent present ability to effectuate the attempt if not prevented. *Allen v. Walker*, 569 So.2d 350, 351 (Ala.1990), citing *Western Union Telegraph v. Hill*, 25 Ala.App. 540, 542, 150 So. 709, 710, *cert. denied* 227 Ala. 469, 150 So. 711 (1933); *Holcombe v Whitaker*, 294 Ala. 430, 435, 318 So.2d 289, 294 (1975).

The court finds that a reasonable jury could return a verdict in favor of the plaintiff and against Stoneburner on this count of the complaint. As such, the court finds the defendants' motion for summary judgment is due to be denied as to defendant Stoneburner. The court having found no vicarious liability on the part of Pressac for Stoneburner's

actions, the court finds the motion for summary judgment is due to be granted in favor of Pressac and against the plaintiff on this count of the complaint.

## CONCLUSION

The court having considered the foregoing, the court finds that the plaintiff has established genuine issues of material fact on some counts of the complaint and failed to establish any genuine issue of material fact on other counts of the complaint. The court **ORDERS** that the defendants' motion for summary judgment is hereby **DENIED** as to Count I of the complaint (Title VII and Constructive Discharge). The defendants' motion for summary judgment is further **DENIED** as to Count II of the plaintiff's complaint against defendant Stoneburner but **GRANTED** as to plaintiff's claim of vicarious liability on this issue against defendant Pressac (Assault and Battery). The defendants' motion for summary judgment is **GRANTED** as to Counts III, IV, and V of the plaintiff's complaint (Negligent Retention, Negligent Supervision and Outrage).

**DONE** and **ORDERED** this the _11_ day of July, 2001.

*Inge P. Johnson*
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE